**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

RANDA JOHNSON,
Plaintiff,

SEP 1 2026 AM11:53
FILED - USDC - FLMD - TPA

v.

SOVERIEGN EDGE SOLUTIONS LLC,
a Washington State Limited Liability Company
d/b/a "The Founders Group" and
d/b/a "The BHNCFG Legacy Circle";

JANE DOE 1, individually
(sued under the public digital pseudonym "Sol Divyne");

JOHN DOE 1, individually
(sued under the public digital pseudonym "So Blak");

JANE DOE 2, individually
(sued under the public digital pseudonym "Deity Ami"); and

SHAYNA HUNTER-SMITH, individually,

Defendants.

Case No.: 8:26-CV-2550-JLB-LSG
(To be assigned by Clerk)

## COMPLAINT

Plaintiff RANDA JOHNSON, proceeding pro se, brings this action against Defendants SOVERIEGN EDGE SOLUTIONS LLC, Jane Doe 1 ("Sol Divyne"), John Doe 1 ("So Blak"), Jane Doe 2 ("Deity Ami"), and Shayna Hunter-Smith, and alleges as follows:

## PARTIES

1. Plaintiff RANDA JOHNSON is an individual and adult citizen of the United States who, at all times relevant to this action, resided, worked, and maintained her principal place of contractual performance in Tampa, Hillsborough County, Florida.
2. Defendant SOVERIEGN EDGE SOLUTIONS LLC is a foreign limited liability company organized under the laws of the State of Washington and doing business throughout the

United States and internationally, including through online communities and commercial activities directed toward Plaintiff in Florida. Defendant operates under the names "The Founders Group" and "The BHNCFG Legacy Circle," including through the public Facebook page located at https://www.facebook.com/TheBHNCFGLegacyCircle. Defendant identifies the corporate entity as "SOVERIEGN EDGE SOLUTIONS LLC" and has used Florida telephone number +1 (941) 949-6462 in connection with its communications and business activities.

3. Defendant JANE DOE 1, sued under the public digital pseudonym "SOL DIVYNE," is an individual whose true legal name and physical address are presently unknown to Plaintiff. Upon information and belief, Jane Doe 1 is the founder, owner, and managing member of SOVERIEGN EDGE SOLUTIONS LLC and exercised corporate authority over Plaintiff's contractual relationship and termination. Jane Doe 1 operated through the public Facebook account located at https://www.facebook.com/sol.divyne.
4. Defendant JOHN DOE 1, sued under the public digital pseudonym "SO BLAK," is an individual male whose true legal name and physical address are presently unknown to Plaintiff. Upon information and belief, John Doe 1 served as a head moderator, manager, and administrator exercising actual and apparent authority within Defendant's organizational structure. John Doe 1 operated through the public Facebook account located at https://www.facebook.com/so.blak.129.
5. Defendant JANE DOE 2, sued under the public digital pseudonym "DEITY AMI," is an individual whose true legal name and physical address are presently unknown to Plaintiff. Upon information and belief, Jane Doe 2 served as a manager, head moderator, and administrator within Defendant's organizational structure. Jane Doe 2 operated through the public Facebook account located at https://www.facebook.com/storyofagoddess.
6. Defendant SHAYNA HUNTER-SMITH is an individual who, upon information and belief, is an adult citizen and resident of a state other than Florida. Upon information and belief, Shayna Hunter-Smith served as a manager, moderator, and administrator within Defendant's organizational structure and operated through the public Facebook account located at https://www.facebook.com/thatss0shayna.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Counts I and II arise under 42 U.S.C. § 1981, which protects the equal right of persons to make and enforce contracts without regard to race and includes the making, performance, modification, and termination of contracts and the enjoyment of the benefits, privileges, terms, and conditions of contractual relationships.
8. This Court has supplemental jurisdiction over Count III pursuant to 28 U.S.C. § 1367(a) because Plaintiff's Florida tort claim arises from the same contractual relationship, communications, conduct, and retaliatory events underlying Plaintiff's federal claims.
9. This Court has personal jurisdiction over Defendant SOVERIEGN EDGE SOLUTIONS LLC because Defendant purposefully directed contractual, administrative, and business

activities toward Plaintiff in Florida, communicated directly with Plaintiff in Florida regarding her contractual relationship, used Florida telephone number +1 (941) 949-6462 in connection with the disputed communications, and directed conduct toward Plaintiff that caused the alleged contractual and economic injuries in this District.

10. This Court has personal jurisdiction over the individual Defendants because they directly participated in, directed, and communicated concerning the conduct alleged herein, including communications directed to Plaintiff in Florida concerning her Florida based contractual performance, her contractual relationship with SOVERIEGN EDGE SOLUTIONS LLC, and the termination and impairment of her existing and prospective contractual and business rights. The individual Defendants communicated directly with Plaintiff while she was performing her contractual duties from Florida, directed conduct toward Plaintiff's Florida based business and contractual interests, and intentionally caused the alleged contractual and economic effects to be experienced by Plaintiff in Florida. The individual Defendants' contacts with Florida therefore arise directly from and relate to the claims asserted in this action.
11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in, were directed toward, or produced their contractual and economic effects in Hillsborough County, Florida. Plaintiff performed her contractual duties from Florida, received Defendants' communications concerning the contractual relationship in Florida, and experienced the alleged termination, loss of contractual benefits, impairment of business opportunities, and other economic effects in this District.

## GENERAL FACTUAL ALLEGATIONS

### THE CONTRACTUAL RELATIONSHIP

12. Plaintiff possesses more than thirty years of professional experience in education, history, consulting, entertainment, training, and leadership.
13. Plaintiff responded in November 2025 to a post by Defendant Jane Doe 1 seeking moderators for Defendant's online community. In subsequent communications, the parties established a binding independent-contractor agreement where Plaintiff agreed to perform essential administrative services—including approving posts, commenting on community content, responding to member inquiries, moderating conflicts, and attending mandatory training and meeting sessions—in exchange for specific, high-value commercial terms and business compensation.
14. Plaintiff entered into and fully performed this independent-contractor moderator agreement. Plaintiff successfully executed her assigned moderation responsibilities in direct reliance upon, and in consideration for, express and implied contractual terms that served as her business compensation, including:

- Unique promotional tracking codes tied to professional and financial credit;
- The right to post unlimited content to build business visibility;
- The right to actively promote her independent business via posts, live content, and tailored offerings to community members; and
- A guaranteed administrative pathway to be entered into the compensated "Ecosystem" structure.

15. Plaintiff's moderator agreement was explicitly conditioned upon these material contractual terms, privileges, and conditions. These promotional privileges, platform rights, and tracking codes were not casual perks; they were the agreed-upon business compensation for Plaintiff's labor, vital to her independent commercial operations, and protected from impairment under federal law.
16. Plaintiff alleges that these rights and benefits constituted contractual interests and related business interests that were valuable to Plaintiff and that were impaired and ultimately terminated following Plaintiff's opposition to racial discrimination.
17. Plaintiff's principal place of performance of the relevant contractual work was Florida.

## PROTECTED OPPOSITION TO RACIAL DISCRIMINATION

18. In December 2025 and early January 2026, Plaintiff engaged in protected activity by raising internal concerns regarding discriminatory moderation practices and objecting to instructions that required moderators to consider race and physical "phenotype" in determining community access and participation.
19. Plaintiff specifically objected to practices in which moderators were instructed to use visual assessments of how "Black" an individual appeared in connection with community access and participation.
20. Plaintiff objected because she believed those practices treated individuals differently on the basis of race and were inconsistent with fair and equitable administration of the community.
21. Plaintiff communicated these objections to individuals exercising managerial and administrative authority within Defendant's organization.
22. Plaintiff alleges that Defendants knew of her opposition to these racial practices before taking the adverse contractual actions described below.

## HOSTILE TREATMENT FOLLOWING PROTECTED ACTIVITY

23. On January 3, 2026, at approximately 9:00 p.m., Plaintiff attended a mandatory moderation training meeting conducted through Zoom.
24. The meeting was dominated by Defendant John Doe 1 ("So Blak"), who served as a head moderator.

25. During the meeting, John Doe 1 publicly addressed Plaintiff as "RONda" rather than by her correct name, Randa, despite the correct pronunciation having previously been provided and used.
26. During the same meeting, John Doe 1 dismissed Plaintiff's more than thirty years of professional educational experience and rejected Plaintiff's data-driven recommendations concerning moderator training and administrative procedures.
27. John Doe 1 also accused Plaintiff of violating group policies, including allegedly approving a "gender war" post, without providing Plaintiff with specific dates, evidence, policy language, or other documentation establishing the alleged violation.
28. Plaintiff's factual and professionally grounded contributions regarding fair and equitable moderation were characterized as "confrontational" and "aggressive," while other moderators received greater support and acceptance when their conduct aligned with the organization's preferred practices.
29. Defendants thereafter subjected Plaintiff to heightened scrutiny and selective enforcement, including publicly tagging and blaming Plaintiff for alleged posting errors while Plaintiff observed similar conduct by other moderators without comparable enforcement.
30. A head moderator also intercepted Plaintiff's active moderation workflow and inserted the moderator's own promotional code in place of Plaintiff's code, affecting Plaintiff's tracking, professional credit, and the financial value associated with her moderator activity.

## JANUARY 4 NOTICE TO CORPORATE LEADERSHIP

31. On January 4, 2026, at approximately 10:40 a.m., Plaintiff sent Defendant Jane Doe 1 ("Sol Divyne") a formal written communication through Facebook Messenger.
32. Plaintiff's January 4 communication documented the treatment during the January 3 meeting, the deliberate mispronunciation of her name, the dismissal of her professional expertise, unsupported accusations concerning posts she had approved, selective enforcement of moderation policies, unequal treatment of her moderation work, and retaliation following her objections to discriminatory practices involving race and phenotype.
33. Plaintiff notified corporate leadership that the treatment had compromised her professional standing and interfered with her ability to continue performing her contractual moderation duties and pursuing the promised compensated opportunity associated with the organization.
34. Plaintiff also explained that the moderator role was connected to business visibility and advertising opportunities through the organization's online platform.
35. Plaintiff further notified Defendant Jane Doe 1 that the hostility and public targeting occurring during the January 3 meeting had caused her significant emotional distress and adversely affected her daily functioning.
36. Plaintiff documented that Defendants had removed compliance-related posts from the community without notice or explanation while identical content remained active on Plaintiff's personal Facebook profile without removal by Facebook.

37. Plaintiff relied upon the continued presence of the same content on her personal Facebook profile as evidence that the content itself had not been independently identified by Facebook as violating Facebook's policies.

## SELECTIVE ENFORCEMENT AND ADMINISTRATIVE DOUBLE STANDARDS

38. Plaintiff also alerted corporate leadership to differences in enforcement between Plaintiff and preferred moderators.
39. Plaintiff also documented examples of content published or permitted by preferred moderators and participants that included disturbing and unsanitary instructions concerning the use of menstrual blood and human waste in purported spiritual practices.
40. Plaintiff alleges that such content was permitted to remain within the community without comparable scrutiny, discipline, or removal, while Plaintiff was subjected to heightened scrutiny and ultimately terminated based, in part, upon allegations concerning the types of content she had approved as a moderator.
41. Plaintiff alleges that the disparate treatment of comparable moderation and content-related conduct supports an inference that the reasons later asserted for her termination were not applied consistently and were pretextual, particularly in light of the temporal proximity between Plaintiff's opposition to racial discrimination, her complaints concerning discriminatory moderation practices, and the termination of her contractual moderator relationship.
42. Plaintiff concluded her January 4 communication by requesting direct intervention by corporate ownership, a transparent review of the conduct of the head moderators, and an opportunity to determine whether the contractual relationship could be resolved equitably.
43. Between January 4 and January 5, 2026, Plaintiff and Jane Doe 1 communicated through Facebook Messenger concerning a meeting.
44. Plaintiff confirmed her availability on January 5, 2026, to discuss the conduct of the head moderators and the problems Plaintiff had documented.
45. On January 5, 2026, Plaintiff attended the scheduled meeting and maintained a professional and constructive demeanor.

## TERMINATION OF THE EXISTING CONTRACTUAL RELATIONSHIP

46. On January 7, 2026, at approximately 6:39 p.m., Defendant Jane Doe 1 sent Plaintiff a Facebook Messenger communication terminating Plaintiff's independent-contractor moderator status and removing her from the moderation team.
47. In that communication, Jane Doe 1 acknowledged that Plaintiff had provided valuable information concerning internal structural problems, stating, "I appreciate you for addressing all of issues for me to better it further."
48. Jane Doe 1 also acknowledged that the conduct of the head moderators could create hostile environments.
49. Nevertheless, Jane Doe 1 stated that Plaintiff's termination was based upon "a few mistakes on your end in such a short amount of time."

50. At the same time, Jane Doe 1 acknowledged deficiencies in the training Plaintiff had received, stating, "I'm currently not in position to teach what I exactly want and I do apologize for not being there thoroughly for you to visually see."
51. Plaintiff alleges that the stated "mistakes" were not previously identified to her with sufficient specificity to allow correction and that the stated reason was inconsistent with the organization's failure to provide clear baseline training and guidance.
57. At approximately 7:10 p.m., Plaintiff immediately challenged the termination in writing through Facebook Messenger. Plaintiff explained that the moderator position was connected to a paid opportunity she had enrolled into or been led to expect, as well as business visibility and advertising access that had now been removed.
58. Plaintiff requested that Defendants identify the specific conduct constituting the alleged "mistakes," including the dates, examples, applicable policies, and evidence of consistent enforcement. Plaintiff further stated that she had not previously received adequate corrective guidance, performance notice, or an opportunity to address the alleged compliance concerns before termination.
59. Jane Doe 1 responded, "Absolutely. Brb," indicating that she would return with the requested information.
60. At approximately 7:22 p.m., rather than providing the requested documentation through Facebook Messenger, a text message was sent to Plaintiff's personal telephone from Florida telephone number +1 (941) 949-6462. In that communication, Jane Doe 1 characterized the compensated opportunity known internally as "The Ecosystem" as an "invite only opportunity" and stated, "Moderation does not equal compensation only membership conversions."
61. Plaintiff alleges that this characterization differed materially from the understanding under which she had performed the moderator role and pursued the prospective compensated opportunity.
62. John Doe 1 ("So Blak"), the head moderator whose conduct Plaintiff had previously reported to corporate leadership, was thereafter involved in communications concerning Plaintiff's termination and contractual status.
63. At approximately 8:32 p.m., Plaintiff objected in writing to John Doe 1's involvement because she had previously identified his conduct as part of the dispute and had specifically requested a neutral administrative review. Plaintiff also documented the professional, financial, and emotional consequences of losing her moderation and business-promotion opportunities and stated that she would take appropriate legal steps to protect her contractual and business rights.
64. At approximately 9:27 p.m., Jane Doe 1 directed Plaintiff to contact The Founders Group page for "specific clarity," stating: "Hi you would need to reach out to The Founders Group page if specific clarity. I do not have that information from this page/phone."
65. Following that exchange, Defendants provided a new and more specific explanation for Plaintiff's termination, alleging that Plaintiff had approved posts concerning "children genitalia and 2 rage bait posts."
66. Plaintiff alleges that this explanation materially differed from the earlier statement that she had made "a few mistakes," and that the specific allegations were raised only after Plaintiff challenged her termination and requested supporting documentation.

67. Plaintiff was aware that moderators had removed the child-related post and that Facebook had flagged the post because a small portion of the child's scrotal area was visible despite the child's genitalia being covered. Plaintiff had approved the post because it was presented as a request for holistic advice concerning the child's skin condition.
68. Plaintiff alleges that the child-related post had not previously been identified to her as a compliance violation during her tenure or during the January 5 meeting. Plaintiff therefore rejected the characterization of the moderation decision as evidence of professional misconduct and requested that Defendants provide the underlying compliance records, applicable policies, dates, and other supporting documentation.
69. At approximately 9:53 p.m., Plaintiff responded regarding the proposed administrative channel and declined to enter digital spaces controlled by individuals she had identified as participants in the conduct underlying her complaint. Plaintiff explained that she was requesting a neutral administrative review and documentation rather than further direct interaction with individuals whose conduct was part of the dispute.
70. Jane Doe 1 did not return to the Facebook Messenger platform to provide the documentation she had promised. Defendants likewise did not provide Plaintiff with the objective compliance records, dates, policy citations, or other material evidence requested to support the changing explanations for her termination.
71. Plaintiff preserved the January 7 communications as evidence concerning the sequence of events, the reasons given for her termination, the subsequent change in those explanations, and Defendants' failure to provide the requested supporting documentation.

## FAILURE TO PROVIDE DOCUMENTATION AND CONTINUED RETALIATION

75. Jane Doe 1 did not return to the Facebook Messenger platform to provide the promised documentation.
76. Instead, communications concerning Plaintiff's termination continued through the corporate telephone number and involved John Doe 1.
77. Plaintiff alleges that John Doe 1 addressed the prospective compensated position but completely failed to address Plaintiff's formal questions concerning racial discrimination, the bad-faith dismissal of her professional qualifications, the loss of business visibility, or the removal of advertising access.
78. Plaintiff alleges that the continued involvement of John Doe 1, after Plaintiff had specifically complained about his conduct, further interfered with any neutral administrative review.
79. On January 8, 2026, Defendant Jane Doe 2 ("Deity Ami"), a head moderator with whom Plaintiff was not connected on social media, accessed and "liked" a post on Plaintiff's personal Facebook page.
80. Plaintiff alleges that this conduct constituted targeted contact occurring immediately after her termination and while the contractual dispute remained active.

81. On January 9, 2026, Defendants permanently blocked Plaintiff from accessing or participating in the primary commercial Facebook group known as The Black Holistic and Natural Community.
82. The blocking eliminated Plaintiff's remaining ability to perform moderation duties, maintain her platform visibility, publish promotional material through the community, and pursue the business and prospective compensated opportunities associated with the platform.

## JANUARY 9 LEGAL NOTICE

83. On January 9, 2026, at approximately 12:59 p.m., Plaintiff sent Jane Doe 1 a formal written Legal Notice through Facebook Messenger, with a copy delivered to the corporate email account TBHNC@gmail.com.
84. Plaintiff's January 9 notice documented the retaliatory sequence and specifically identified her prior opposition to racial profiling and phenotype-based community access practices.
85. Plaintiff documented that her prior disciplinary interaction consisted of a December 29, 2025 telephone call lasting approximately twenty-three minutes and twenty-one seconds with John Doe 1.
86. Plaintiff alleged that during that call John Doe 1 relied upon vague "head notes" and did not provide material evidence, specific policy language, or documentation identifying a concrete compliance violation.
87. Plaintiff's January 9 notice again connected the adverse actions to her opposition to practices in which white participants were allegedly treated differently and community access was tied to visual assessments of racial phenotype.
88. Plaintiff also documented that Jane Doe 1 subjected Plaintiff to heightened scrutiny regarding her background during a private leadership-evaluation Zoom meeting.
89. Jane Doe 1 explicitly questioned Plaintiff's operational and planning capabilities despite Plaintiff's more than thirty years of highly decorated professional experience.
90. Plaintiff alleges that this sudden, unwarranted dismissal of her professional qualifications was completely arbitrary, entirely pretextual, and used by Defendants to manufacture a false narrative of professional incompetence to mask their true retaliatory motive following her refusal to execute their racial discrimination policies.
91. Plaintiff's January 9 notice requested that Defendants identify the exact policies allegedly violated, the specific dates of the alleged mistakes, and a neutral representative who could address the dispute.
92. Plaintiff provided Defendants until January 14, 2026, to provide the requested information.
93. Jane Doe 1 did not provide the requested information through Facebook Messenger by that deadline.

## CORPORATE EMAIL RESPONSE

94. On January 9, 2026, at approximately 10:14 p.m., less than ten hours after Plaintiff transmitted her formal legal notice, an unsigned email was sent to Plaintiff from the corporate email address tbhncfoundersgroup@gmail.com.
95. The anonymous corporate communication stated that the organization reserved the right to "revoke participation at any time for any reason."
96. The communication also stated that time spent responding to Plaintiff's complaints would be billed to Plaintiff at a rate of $250 per hour.
97. The communication further asserted that disclosure of information outside of an attorney-client relationship would violate Plaintiff's NDA and Non-Circumvention Agreement.
98. At approximately 10:47 p.m., Plaintiff responded and requested that the sender identify the sender's name, title, and authority to communicate on behalf of the organization.
99. Plaintiff further documented that the organization's actions had removed her access to moderation opportunities, posting privileges, business visibility, and promotional access.
100. Plaintiff explained that her refusal to continue direct text communications with individuals she had identified as participants in the hostile conduct was a boundary intended to protect herself from further administrative hostility and was not a refusal to cooperate with a neutral investigation.
101. At approximately 10:52 p.m., the anonymous corporate sender responded: "It will not be signed. We do not move to your beat."
102. The communication concluded by instructing Plaintiff: "Please do not contact us again."
103. Defendants have not provided Plaintiff with the objective compliance records, dates, policy citations, or material evidence requested to support the shifting explanations given for her termination.
104. Defendants have continued to maintain Plaintiff's loss of access to the platform, moderation opportunity, business visibility, and associated prospective contractual opportunities.

## DAMAGES

105. As a direct and proximate result of Defendants' conduct, Plaintiff lost her existing moderator contractual relationship and associated contractual and business benefits.
106. Plaintiff also lost access to business visibility, promotional opportunities, posting privileges, and a prospective compensated opportunity that Plaintiff had reasonably expected to pursue through the organization.
107. Plaintiff estimates that her economic damages presently exceed **$100,000**, based upon the termination of her moderator relationship, loss of associated business, advertising, promotional, and posting opportunities, the loss of her February 2026 course and coaching revenue, and the loss of an additional course opportunity planned for the summer of 2026. Plaintiff had obtained sixteen (16) signups for the February course,

which was priced at $1,111.11, exclusive of coaching revenue. Plaintiff will establish the precise amount of her damages through documentary evidence and at trial.

108. Plaintiff further suffered loss of professional reputation, embarrassment, humiliation, and emotional distress as a result of the conduct alleged herein.

109. Plaintiff seeks actual and consequential damages to the extent recoverable under applicable law, including damages associated with the impairment and termination of contractual rights and the loss of prospective contractual opportunities.

## COUNT I

## RETALIATION AND IMPAIRMENT OF CONTRACTUAL RIGHTS

## UNDER 42 U.S.C. § 1981

**Against SOVERIEGN EDGE SOLUTIONS LLC and Jane Doe 1**

110. Plaintiff realleges and incorporates paragraphs 1 through 109 as if fully set forth herein.

111. Section 1981 protects the right of persons to make and enforce contracts without regard to race and expressly includes the making, performance, modification, and termination of contracts, as well as the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

112. Plaintiff maintained an existing contractual relationship with Defendant SOVERIEGN EDGE SOLUTIONS LLC as an independent-contractor moderator.

113. Plaintiff possessed valuable express and implied contractual rights under this independent-contractor agreement. These material terms and conditions of her contract included, but were not limited to: active moderation authority, platform administrative access, unique promotional tracking codes, business visibility, and posting privileges.

114. Plaintiff engaged in protected activity under Section 1981 by opposing and refusing to participate in Defendants' alleged illegal racial discrimination policies, including explicit directives requiring moderators to consider race and physical phenotype when determining community access and participation.

115. Defendants had actual knowledge of Plaintiff's protected opposition and refusal before taking adverse action against her contractual terms.

116. Shortly after Plaintiff objected to the discriminatory practices and formally reported the hostile conduct to corporate leadership, Defendants subjected Plaintiff to heightened scrutiny, hostile treatment, selective enforcement, and the targeted impairment and ultimate termination of her contractual moderator relationship.

117. Defendant Jane Doe 1 terminated Plaintiff's independent-contractor moderator relationship on January 7, 2026.

118. Defendants intentionally stripped away and disrupted the material terms of her contract by intercepting Plaintiff's active workflow to replace her unique promotional tracking code, and subsequently blocking Plaintiff from the community platform to completely revoke the visibility, advertising access, and promotional terms guaranteed by her contractual relationship.

119. The close temporal proximity between Plaintiff's protected opposition, her refusal to participate in racial discrimination, her January 4 formal complaint, the January 5 meeting, and the January 7 termination strongly supports an inference of retaliatory motive.

120. Defendants' stated reasons for termination also shifted materially after Plaintiff challenged the termination and requested specific documentation and objective compliance records.

121. Defendants initially cited "a few mistakes," subsequently acknowledged deficiencies in Plaintiff's baseline training, and thereafter asserted entirely new and specific allegations concerning child-related content and "rage bait" posts.

122. Plaintiff alleges that these shifting explanations were entirely pretextual, and that Plaintiff's protected opposition to and refusal to execute the discriminatory policies was the but-for cause of her termination and the impairment of her contractual terms.

123. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff suffered severe economic losses, loss of contractual benefits, loss of business opportunities, and other compensable damages.

124. Plaintiff is entitled to actual damages, consequential damages, punitive damages, and all other relief available under 42 U.S.C. § 1981 and applicable law.

## COUNT II

## RETALIATORY IMPAIRMENT OF PROSPECTIVE CONTRACTUAL RELATIONSHIP

## UNDER 42 U.S.C. § 1981

**Against SOVERIEGN EDGE SOLUTIONS LLC and Jane Doe 1**

125. Plaintiff realleges and incorporates paragraphs 1 through 109.

126. Prior to the termination of Plaintiff's moderator relationship, Plaintiff was actively pursuing a prospective compensated contractual opportunity within Defendant's organizational structure, referred to internally as "The Ecosystem."

127. Plaintiff alleges that the prospective opportunity was connected to her moderator role and that she had satisfied the applicable foundational requirements and was pursuing the compensated position through Defendant's established process.

128. Plaintiff alleges that the opportunity represented a concrete prospective contractual relationship rather than a merely speculative desire for employment or compensation.

129. Plaintiff's protected activity included opposing racial discrimination within Defendant's organization and objecting to directives concerning race and phenotype.

130. Defendants knew of Plaintiff's protected activity before terminating her moderator relationship and blocking her from the platform.

131. Defendants' actions prevented Plaintiff from continuing the administrative and contractual pathway through which she expected to pursue the prospective compensated opportunity.

132. Jane Doe 1 subsequently characterized the opportunity as "invite only" and stated that moderation did not equal compensation, thereby materially changing the explanation of the opportunity after Plaintiff challenged her termination.

133. Plaintiff alleges that Defendants' adverse actions were taken because of Plaintiff's opposition to and refusal to execute the discriminatory directives, and that her protected refusal was the but-for cause of her termination and platform blocking, which prevented her from pursuing the prospective contractual opportunity.

134. The temporal proximity between Plaintiff's protected activity and Defendants' termination and blocking actions supports an inference of retaliatory intent.

135. As a direct and proximate result, Plaintiff lost the opportunity to pursue the prospective compensated contractual relationship and suffered economic and other damages.

136. Plaintiff seeks all relief available under 42 U.S.C. § 1981 and applicable law.

## COUNT III

## TORTIOUS INTERFERENCE WITH AN ADVANTAGEOUS BUSINESS RELATIONSHIP

**Against John Doe 1, Jane Doe 2, and Shayna Hunter-Smith, Individually**

137. Plaintiff realleges and incorporates paragraphs 1 through 109.

138. Plaintiff maintained an existing and prospective business relationship with SOVERIEGN EDGE SOLUTIONS LLC involving her moderator position, associated business benefits, and prospective compensated opportunities.

139. The existing and prospective relationship afforded Plaintiff actual or prospective legal and contractual rights, including the right to perform moderation duties, maintain associated platform access and business visibility, and pursue the prospective compensated opportunity.

140. Defendants John Doe 1, Jane Doe 2, and Shayna Hunter-Smith knew of Plaintiff's existing and prospective contractual and business relationship with SOVERIEGN EDGE SOLUTIONS LLC.

141. The individual Defendants participated in moderation and administrative activities affecting Plaintiff's contractual status, access to the platform, and ability to pursue associated business opportunities.

142. John Doe 1 participated directly in the conduct that preceded and followed Plaintiff's termination, including the December 29 disciplinary call, the January 3 meeting, and the January 7 communications concerning Plaintiff's contractual status.

143. John Doe 1 thereafter communicated with Plaintiff concerning the prospective compensated position after Plaintiff had already complained about his treatment of her and had identified his conduct as part of the dispute she had presented to corporate leadership.

144. Jane Doe 2 engaged in direct activity concerning Plaintiff's personal Facebook page immediately after Plaintiff's termination and while the contractual dispute remained active.

145. Upon information and belief, Shayna Hunter-Smith participated in the administrative structure governing Plaintiff's moderator relationship and had knowledge of the actions affecting Plaintiff's contractual and business interests.

146. Plaintiff alleges that the individual Defendants did not merely carry out legitimate corporate decisions in the ordinary course of their agency relationships. Rather, Plaintiff alleges that they used their positions and authority, at least in substantial part, to advance personal hostility and retaliatory purposes arising from Plaintiff's opposition to discriminatory practices.

147. Plaintiff further alleges that the individual Defendants acted outside the legitimate scope of their administrative authority, or employed their authority for purposes unrelated to the legitimate business interests of SOVERIEGN EDGE SOLUTIONS LLC, including targeted communications, selective enforcement, unsupported accusations, and interference with Plaintiff's relationship with corporate ownership.

148. Plaintiff alleges that the individual Defendants' interference was intentional and unjustified and was undertaken with knowledge that it would impair or terminate Plaintiff's existing and prospective contractual and business relationships.

149. Plaintiff further alleges that the individual Defendants' conduct included improper means and was not undertaken solely for the legitimate economic or business interests of SOVERIEGN EDGE SOLUTIONS LLC.

150. The individual Defendants' conduct interfered with Plaintiff's existing contractual relationship and prospective contractual opportunity and contributed to the termination and impairment of those relationships.

151. As a direct and proximate result of the individual Defendants' interference, Plaintiff suffered economic loss and other damages.

152. Plaintiff seeks all damages and other relief available under Florida law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff RANDA JOHNSON respectfully requests that the Court enter judgment in her favor and against the Defendants and grant the following relief:

A. Award Plaintiff actual and consequential damages in an amount to be established at trial, including damages arising from the impairment and termination of her contractual relationship and the loss of prospective contractual opportunities;

B. Award Plaintiff damages for the loss of contractual and business benefits, including business visibility, promotional opportunities, posting privileges, and other benefits associated with the contractual relationship;

C. Award Plaintiff lost compensation and other economic damages associated with the prospective compensated contractual opportunity to the extent recoverable under applicable law;

D. Award compensatory damages for humiliation, embarrassment, loss of professional reputation, and emotional distress to the extent recoverable under applicable law;

E. Award punitive damages to the extent authorized by 42 U.S.C. § 1981 and other applicable law upon proof that the Defendants acted with the requisite discriminatory, retaliatory, malicious, or reckless state of mind;

F. Award reasonable attorney's fees and litigation costs to the extent authorized by 42 U.S.C. § 1988 and other applicable law;

G. Grant equitable and injunctive relief to the extent authorized by law; and

H. Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff RANDA JOHNSON hereby demands a trial by jury on all issues so triable.

Dated: August 29, 2026

Respectfully submitted,

/s/ Randa Johnson

RANDA JOHNSON
Plaintiff, Pro Se

Tampa, Florida

# VERIFICATION

I, RANDA JOHNSON, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I am the Plaintiff in the foregoing action; that I have read the foregoing Complaint; and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and reasonable belief, except as to matters specifically stated upon information and belief, which I believe to be true.

Executed on August 29, 2026.

/s/ Randa Johnson

RANDA JOHNSON
Plaintiff, Pro Se
Tampa, Florida